IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES JOHNSON, | ) | CASE NO. 1:20-CV-00299 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**Introduction**

Before me[1] is an action by Charles Johnson under 42 U.S.C.§ 405(g) seeking judicial review of the 2019 decision of the Commissioner of Social Security that denied Johnson's 2017 application for supplemental security income benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative proceedings.[4] Pursuant to my

---

[1] The parties consented to my exercise of jurisdiction and the matter was transferred to me by United States District Judge Donald C. Nugent. ECF No. 20.
[2] ECF No. 1.
[3] ECF No. 8.
[4] ECF No. 9.

1

initial[5] and procedural orders,[6] the parties have filed briefs,[7] as well as supporting charts[8] and fact sheets.[9] The parties have met and conferred with the goal of reducing or clarifying the issues.[10]

For the following reasons, the decision of the Commissioner will be affirmed.

**Facts**

The ALJ's Opinion

Johnson was born on June 19, 1972 and so was 47 years old at the time of the ALJ's decision.[11] He graduated high school and completed one of college while in prison, studying hospitality management.[12] Johnson has no past relevant work since he was incarcerated for 26 years, from age 19 to 45,[13] for offenses that include murder.[14] At the time of the hearing, he was on parole and living with his sister.[15]

The ALJ found that Johnson has the following severe impairments:

> Degenerative disc disease, lumbar; diabetes mellitus; morbid obesity; obstructive sleep apnea; hypersomnia; heart failure with preserved ejection fraction; enlarged cardiac silhouette enlargement; deformed fifth metatarsal from old healed fracture,

---

[5] ECF No. 5.
[6] ECF No. 10.
[7] ECF Nos. 15 (Johnson), 17 (Commissioner).
[8] ECF Nos. 15, Attachment (Johnson), 17, Attachment (Commissioner).
[9] ECF No. 14 (Johnson).
[10] ECF No. 18.
[11] Tr. at 30, 32.
[12] *Id*. at 41.
[13] *Id*. at 42-43.
[14] *Id*. at 787.
[15] *Id*. at 48.

right; depressive disorder; antisocial personality disorder; and borderline intellectual functioning.[16]

After finding that Johnson does not have an impairment or combination of impairments that meet or medically equal a listing,[17] which included determinations that Johnson's mental impairment does not cause at least two or one extreme limitation in various areas of functioning or manifest itself as significantly subaverage general intellectual functioning,[18] and upon reviewing the entire record, the ALJ concluded that Johnson has the residual functional capacity (RFC) for light work with the following limitations:

> The claimant can sit for one hour at a time for a total of six hours in an eight-hour workday, the claimant can stand fifteen minutes at a time for a total of two hours in an eight-hour workday. The claimant can walk for ten minutes at a time for a total of one hour in an eight-hour workday. The claimant can frequently reach in all directions, handle, finger, feel, push and pull bilaterally. The claimant can frequently use foot controls bilaterally. The claimant can occasionally climb ramps and stairs, stoop, kneel and balance. The claimant should never climb ladders, ropes, and scaffolds, crouch, or crawl. The claimant should never be exposed to unprotected heights or dangerous moving mechanical parts. The claimant can occasionally be exposed to humidity, wetness, extreme cold, extreme heat, as well as dust, odors, fumes, and other pulmonary irritants. The claimant can occasionally operate a motor vehicle. The claimant can understand, remember and carryout simple, routine and repetitive tasks, but not at a production rate pace (e.g. assembly line work). The claimant can occasionally tolerate changes in a routine work setting. Changes should be well explained and introduced slowly. The claimant can occasionally interact with others.[19]

With the testimony of a vocational expert (VE), the ALJ then determined that a person with Johnson's age, education, work experience and RFC could perform the duties

---

[16] *Id*. at 18.
[17] *Id.*
[18] *Id*. at 20-23.
[19] *Id*. at 23.

3

of mail clerk, electronics worker and inspector, hand packaging, and that jobs in these positions were available in significant numbers in the national economy.[20] Accordingly, Johnson was found not disabled.[21]

Johnson's Position

Johnson raises three issues for judicial review:

    1.    The ALJ erred by not incorporating Johnson's need to elevate his legs into the RFC.[22]

    2.    The ALJ erred by not giving good reasons for the weight given to the opinion of Dr. Lauren Kreiger, a treating physician.[23]

    3.    The ALJ erred by not properly evaluating Johnson's credibility, particularly as to his compliance with treatment.[24]

As to the first issue, incorporating into the RFC a need for Johnson to elevate his legs, Johnson here contends that, when seen at an emergency room in 2018 for lower extremity edema, he was told to keep his legs elevated.[25] The ALJ minimized that need, citing an examination note from 2019 that found only trace edema.[26] Johnson maintains that the ALJ should have evaluated the instruction from the emergency room physician as a medical opinion and accordingly adjusted the RFC.[27]

---

[20] *Id*. at 30-31.
[21] *Id*. at 31.
[22] ECF No. 15 at 14-15.
[23] *Id.* at 15-19.
[24] *Id*. at 19-21.
[25] *Id*. at 14.
[26] *Id*. (quoting record).
[27] *Id.* at 15.

4

In the second issue, Johnson initially acknowledges that new regulations no longer presumptively assign controlling weight to the opinions of treating sources and that the ALJ instead consider whether opinions are "supportable" and "consistent" with the evidence.[28] Dr. Kreiger opined that until Johnson's sleep apnea was treated, he should not drive or operate heavy machinery.[29] Yet the RFC here, without reference to Dr. Kreiger's opinion, allows Johnson to operate motor vehicles on an occasional basis without conditioning that on controlling his sleep apnea.[30] Further, the RFC provisions for sitting and walking are at variance with Dr. Krieger's opinion.[31]

The ALJ found Dr. Kreiger's opinion "not persuasive" because: (a) it included a comment that Johnson is unable to work, which goes to an issue reserved to the Commissioner; and (b) the opinion was based, in part, on Johnson's subjective complaints.[32] Johnson argues that both state reasons are not good reasons, and that Fr. Kreiger's opinion is supportable and consistent with the record.[33]

Finally, as to the third issue, Johnson argues that while the record does reflect "some problems" with Johnson's compliance with recommended treatment, some of the problems are due to insurance coverage issues.[34] Thus, without more, mere non-compliance is not

---

[28] *Id.* at 16 (citing regulations).
[29] *Id.* at 17 (citing record).
[30] *Id.*
[31] *Id.*
[32] *Id.* at 18 (quoting record).
[33] *Id.* at 19.
[34] *Id.* at 19.

5

substantial evidence of Johnson's lack of credibility. Further, he maintains that the ALJ 'played doctor" by inferring or suggesting, in the absence of any statement by a medical professional, that surgery or the use of a TEND unit were possible options for treating Johnson's lower back conditions, such that the lack of these treatments show that the lower back condition is not as severe as Johnson alleges.[35]

### The Commissioner's Position

As to the first issue of including leg raising in the RFC, the Commissioner points out that Johnson testified that he takes medication for swelling in his legs in the morning and that it works within 30-35 minutes and keeps his legs "okay" for the balance of the day.[36] Because of this, Johnson stated it was necessary to elevate his legs only three times a week for about 30 minutes to an hour.[37] Thus, because Johnson failed to show a need to elevate his legs during the workday, the RFC is not improper.[38]

Next, as to the issue of Dr. Kreiger's opinion, the Commissioner contends that any failure to more fully discuss Dr. Kreiger's opinion was harmless error. Specifically, as to driving or operating machinery, the Commissioner notes that none of the jobs identified by the VE involved driving or operating machinery.[39] Similarly, Dr. Kreiger's opinion that

---

[35] *Id*. at 20.
[36] ECF No. 17 at 6.
[37] *Id*.
[38] *Id*.
[39] *Id*. at 8.

6

Johnson cannot sit without breaks or walk more than two blocks are implicated in the jobs identified.[40]

Finally, as to the assessment of Johnson's credibility, the Commissioner point out that while it's true that an ALJ should consider reasons why a claimant failed to pursue treatment before drawing an adverse influence from non-compliance with treatment, the ALJ here did directly ask Johnson if he had insurance to cover his CPAP machine and the record further shows that Johnson acquired health insurance two months into the period under consideration.[41]

**Analysis**

The standard of review here is the well-established substantial evidence standard that need not be restated. Further, as Johnson himself stated, his claims as to the weight assigned to a medical source opinion are considered under the new regulation that applies to claims filed after March 17, 2017.

<u>RFC and Leg Raising</u>

As stated in *Wiley v. Commissioner of Social Security*,[42] the comment by an emergency room physician that Johnson should elevate his legs is not a medical opinion, *i.e.*, a "judgment about the nature of [Johnson's] condition or [his] capabilities, but rather

---

[40] *Id*.
[41] *Id*. at 12.
[42] 2017 WL 3262264 (E.D. Mich. May 19, 2017), R&R adopted by, 2017 WL 3226069 (E.D. Mich. July 31, 2017).

7

is a suggested course of treatment."[43] That general comment, moreover, does not specify when or for how long Johnson should elevate his leg.[44] Where, as here, Johnson has not established "the need to elevate his legs during the workday at all," the ALJ "did not err by not including this restriction in her RFC finding."[45]

### Dr. Kreiger's Opinion

As the Sixth Circuit explained in *Rabbers v. Commissioner*,[46] the purported error by this ALJ in failing to include certain restrictions in the RFC that would not have altered the jobs available to the claimant is not akin to failing to give good reasons for the weight given to the opinion of a treating source but is harmless because it does not deprive the reviewing court of the ability to conduct a meaningful review of the ALJ's decision.[47]

### Johnson's Credibility

Conservative treatment and non-compliance with treatment are proper factors in assessing a claimant's subjective complaints.[48] And while an ALJ should consider pertinent reasons why an individual did not pursue treatment before drawing adverse inferences,[49]

---

[43] *Id.* at *8.
[44] See, ECF No. 17 at 6 (quoting record).
[45] *Wiley*, 2017 WL 3262264, at *8.
[46] 582 F.3d 647 (6th Cir. 2009).
[47] *Id.* at 657-58.
[48] *Bentley v. Comm'r*, 23 Fed. Appx. 434, 435-36 (6th Cir. 2001).
[49] *Dooley v. Comm'r*, 656 Fed. Appx. 113, 119 n.1 (6th Cir. 2016).

in the end the ALJ's is not required to accept a claimant's subjective complaints and the ALJ's conclusion will be given great weight and deference.[50]

Here, as the Commissioner notes, the ALJ did ask if Johnson had insurance to cover his CPAP therapy, which he acknowledged,[51] and the record shows that he did acquire health insurance two months into the relevant period.[52]

In sum, I find no error in the ALJ's decision to find that Johnson's impairments are not as severe as he alleges.[53]

## Conclusion

For the reasons stated, the decision of the Commissioner is affirmed.

IT IS SO ORDERED.

Dated: March 30, 2021              s/William H. Baughman Jr.
United States Magistrate Judge

---

[50] *Jones v. Comm'r*, 336 F.3d 469,476 (6th Cir. 2003).
[51] Tr. at 47.
[52] *Id*. at 811.
[53] *Id*. at 28.

9